FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 31, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARYL V.,[1]<br>          Plaintiff,<br><br>   vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>          Defendant. | No. 4:19-cv-05036-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 26, 2014, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of June 1, 2009.[3] Tr. 164-70. The

---

[3] In addition to the current application, Plaintiff previously filed an application for Title XVI benefits on October 26, 2011, and an application for Title II benefits on November 7, 2011, alleging disability as of March 1, 2008. Tr. 1127. On February 16, 2012, Plaintiff's Title XVI claim was granted and he was found disabled as of October 26, 2011. Tr. 92-103. However, Plaintiff was over-resourced and did not receive benefits. Tr. 1127. On February 9, 2012, Plaintiff's Title II claim was denied as it was determined that he was not disabled through December 31, 2008, the date he was last eligible for such benefits. Tr. 81-91. The

ORDER - 6

application was denied initially and on reconsideration.  Tr. 104-06, 110-14.

Plaintiff appeared before an administrative law judge (ALJ) on June 15, 2016.  Tr.

35-62.  On October 3, 2016, the ALJ denied Plaintiff's claim.  Tr. 17-34.  On

appeal, this Court granted the parties' stipulated motion to remand the case to the

Social Security Administration and instructed the ALJ to consult with a medical

expert regarding Plaintiff's impairments and whether Plaintiff had disability onset

between the alleged onset date and the date last insured, proceed with the

sequential evaluation process, as necessary, including evaluation of Plaintiff's

subjective symptom reports and the medical opinion evidence, and issue a new

decision.  Tr. 1217-28.

    On December 12, 2018, Plaintiff appeared before a different ALJ for a

second hearing.  Tr. 1143-86.  On January 9, 2019, the ALJ denied Plaintiff's

claim.  Tr. 1124-42.  At step one of the sequential evaluation process, the ALJ

found Plaintiff had not engaged in substantial gainful activity during the period

from his alleged onset date of June 1, 2009 through his date last insured of

December 31, 2009.  Tr. 1130.  At step two, the ALJ found Plaintiff had the

---

prior Title II determination was issued under the assumption that Plaintiff's date

last insured was December 31, 2008.  Tr. 1127, 1191.  It was later determined that

Plaintiff's date last insured was December 31, 2009.  Tr. 1191.

ORDER - 7

following medically determinable impairments: degenerative disc disease of the cervical, lumbar, and thoracic spines; and acute GI bleed in July 2009. Tr. 1130. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or were expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months, so Plaintiff's impairments were not severe. Tr. 1130, 1134. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2009, the alleged onset date, through December 31, 2009, the date last insured. Tr. 1135. The ALJ found that, in the alternative, even assuming that Plaintiff's impairments were severe prior to the date last insured, he would have been able to perform his past relevant work as a building inspector, and therefore, his claim would be denied at step four of the sequential evaluation process. Tr. 1134.

Per 20 C.F.R. § 404.984, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act from June 1, 2009, the alleged onset date through December 31, 2009, the date on which he was last insured. Plaintiff raises the following issues for review:

ORDER - 8

1

2        1. Whether the ALJ properly evaluated the medical opinion evidence;

3        2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4        3. Whether the ALJ conducted a proper step-two analysis; and

5        4. Whether the ALJ conducted a proper step-four analysis.

6 ECF No. 16 at 6-7.

7                          **DISCUSSION**

8 **A.    Medical Opinion Evidence**

9        Plaintiff challenges the ALJ's evaluation of the medical opinion of Hayden

10 Hamilton, M.D.  ECF No. 16 at 12-14.

11        There are three types of physicians: "(1) those who treat the claimant

12 (treating physicians); (2) those who examine but do not treat the claimant

13 (examining physicians); and (3) those who neither examine nor treat the claimant

14 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

15 *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

16 Generally, a treating physician's opinion carries more weight than an examining

17 physician's opinion, and an examining physician's opinion carries more weight

18 than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations

19 give more weight to opinions that are explained than to those that are not, and to

20

ORDER - 9

the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On January 22, 2012, Dr. Hamilton completed a physical examination report of Plaintiff. Tr. 402-09. He diagnosed Plaintiff with cervical spine degenerative joint disease and radiculopathy, impaired range of motion of the cervical spine, thoracic spine degenerative joint disease and multiple compression fractures, impaired range of motion of the thoracic spine, and lumbar degenerative joint

disease and radiculopathy. Tr. 408. He opined that Plaintiff could stand/walk for less than two hours in an eight-hour workday, sit for three hours in an eight-hour workday, and lift 10 pounds both occasionally and frequently. Tr. 408. Dr. Hamilton opined that Plaintiff should avoid climbing, balancing, stooping, kneeling, crouching, and crawling, and only occasionally reach, handle, finger, and feel. Tr. 409. He opined that Plaintiff should avoid working at heights and around heavy machinery. Tr. 409.

The ALJ gave little weight to Dr. Hamilton's opinion. Tr. 1134. To the extent that Dr. Hamilton's opinion was inconsistent with the nonexamining opinion of Dr. Morse, Tr. 1157-72, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Hamilton's opinion. *See Bayliss*, 427 F.3d at 1216.

*1. Dr. Morse*

Here, the ALJ gave great weight to the opinion of board-certified internist and cardiologist, John Morse, M.D. Tr. 1133. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v.*

*Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Morse reviewed the entire medical record and testified at the administrative hearing. Tr. 1157-72. He opined that Plaintiff's medical records were sufficient to establish that Plaintiff had the medically determinable impairments of lumbar, thoracic, and cervical degenerative disc disease during the relevant period, but he did not identify any objective evidence that showed these impairments caused more than minimal limitations through Plaintiff's date last insured. Tr. 1162-64. Dr. Morse concluded that Plaintiff did not have a severe impairment or combination of impairments from June 1, 2009 through December 31, 2009. Tr. 1163.

Plaintiff fails to assert any challenge to the ALJ's evaluation of Dr. Morse's opinion. Therefore, argument on this issue is waived. *See Carmickle v. Comm'r*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court reviewed the record and finds the ALJ's weighing of Dr. Morse's medical opinion is supported by, and consistent with, other evidence in the record.

The ALJ found that the opinion of Dr. Morse was well supported by the record as a whole. Tr. 1133-34. As discussed *infra*, the ALJ determined that Dr. Hamilton's opinion was inconsistent with the objective findings in the record and outside of the relevant time period, and thus provided legally sufficient reasons for giving less weight to the opinion of Dr. Hamilton, and for giving more weight to Dr. Morse's opinion.

*2. Inconsistent with Objective Findings*

The ALJ gave little weight to Dr. Hamilton's opinion, finding that it was inconsistent with the benign examinations and imaging prior to the date last insured. Tr. 1134. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).  Here, the ALJ noted that although

Dr. Hamilton's January 2012 examination showed some evidence of radiculopathy,

an electromyography (EMG) and nerve conduction study (NCS) done in June 2011

was normal.  Tr. 1134 (citing Tr. 391-92).  Further, the ALJ cited objective

evidence in the record that demonstrated benign examinations and imaging during

the period at issue.  Tr. 1134; *see, e.g.,* Tr. 354-55 (May 5, 2006: physical

examination showed only mild findings despite Plaintiff's assertion that his back

pain was "so bad that he cannot do anything now"); Tr. 473-77 (February 21,

2009: Plaintiff presented to the emergency room after he was assaulted, and

although he reported severe back, right foot, and left thumb pain, a physical

examination was largely unremarkable; Plaintiff was noted to be in no acute

distress, with full range of motion of all extremities, painless range of motion in his

neck, no tenderness in the cervical or lumbar spine, full strength, and no evidence

of any motor or sensory deficits); Tr. 477 (February 21, 2009: x-rays of Plaintiff's

thoracic spine were unremarkable, revealing only age appropriate degenerative

disc disease changes; x-rays of Plaintiff's right foot and left thumb were normal);

Tr. 607-08 (July 28, 2009: Plaintiff sought treatment for a GI bleed and although

he reported back pain, and noted a history of chronic back pain in his "past medical

history," physical examination showed normal findings of his cervical and lumbar

spines, normal range of motion of all extremities, and no motor deficits).  Based on

this record, the ALJ reasonably concluded that Dr. Hamilton's examination, which took place two years after Plaintiff's date last insured, did not support functional limitations related to Plaintiff's back impairment during the relevant period. Tr. 1134. This was a specific, legitimate reason to assign little weight to Dr. Hamilton's opinion.

### 3. *Opinion Outside Relevant Time Period*

The ALJ assigned little weight to Dr. Hamilton's opinion because it was outside the relevant time period. Tr. 1134. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165; *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (report that predated period at issue was relevant only to proving Plaintiff's condition had worsened); *Johnson v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions that were remote in time, and reliance on more recent opinions); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion rendered more than a year after the date last insured was a germane reason to not address the opinion). The ALJ determined that there was "no evidence to suggest the limitations identified by Dr. Hamilton were present during the period from June 1, 2009 through December 31, 2009." Tr. 1134. The ALJ noted that Dr. Hamilton's examination took place more than two years after the date last insured, and therefore did not reflect Plaintiff's functioning during the

period at issue.  Tr. 1134.  The ALJ also cited the medical expert's testimony that although Dr. Hamilton's examination showed some evidence of radiculopathy, an examination from one year earlier showed no neurological deficits, and an EMG in June 2011 was normal.  Tr. 1134; *see* 391-92, 1161-64.  Additionally, Dr. Hamilton only reviewed records from after the relevant time period.  Tr. 404.  Plaintiff argues that Dr. Hamilton's opinion is relevant to establishing whether Plaintiff's impairments existed prior to the date last insured and asserts that Dr. Morse testified it could be inferred that the medically determinable impairments that existed at the time of Dr. Hamilton's examination also existed during the relevant period.  ECF No. 16 at 13.  However, as discussed *supra*, Dr. Morse testified that there was nothing in the record to suggest that Plaintiff's spinal impairments were symptomatic during the relevant period.  Tr. 1163.  The ALJ reasonably found that Dr. Hamilton's opinion was entitled to less weight because it focused on Plaintiff's limitations after the date last insured.  Tr. 1134.  This was a specific and legitimate reason to discredit Dr. Hamilton's opinion.

### B.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims.  ECF No. 16 at 14-18.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

claimant is not required to show that [the claimant's] impairment could reasonably

be expected to cause the severity of the symptom [the claimant] has alleged; [the

claimant] need only show that it could reasonably have caused some degree of the

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to

sufficiently explain why it discounted claimant's symptom claims)).  "The clear

and convincing [evidence] standard is the most demanding required in Social

Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting

*Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 1132.

### 1. Lack of Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 1132. Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2).

Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ discussed Plaintiff's alleged symptoms that caused him to be unable to work, such as pain caused by all movement, numbness and shooting pains in his back, arms, and legs, and an inability to stand for more than a few minutes. Tr. 1131. However, the ALJ found that the records through Plaintiff's date last insured of December 31, 2009 were "devoid of any objective findings establishing these conditions as 'severe' impairments." Tr. 1132; *see, e.g.,* Tr. 354-55 (May 5, 2006: physical examination showed only mild findings despite Plaintiff's assertion that his back pain was "so bad that he cannot do anything now"); Tr. 473-77 (February 21, 2009: Plaintiff presented to the emergency room after he was assaulted, and although he reported severe back, right foot, and left thumb pain, a physical examination was largely unremarkable; Plaintiff was noted to be in no acute distress, with full range of motion of all extremities, painless range of motion in his neck, no tenderness in the cervical or lumbar spine, and no evidence of any motor or sensory deficits); Tr. 477 (February 21, 2009: x-rays of Plaintiff's thoracic spine were unremarkable, revealing only age appropriate degenerative disc disease changes; x-rays of Plaintiff's right foot and left thumb were normal); Tr. 607-08 (July 28, 2009: Plaintiff sought treatment for a GI bleed

and although he reported back pain, and noted a history of chronic back pain in his "past medical history," a physical examination showed normal findings of his cervical and lumbar spines, normal range of motion of all extremities, and no motor deficits).  The ALJ noted that after the February 2009 emergency room visit, there were no additional back complaints or medical visits related to his back impairment until March 2010.[4]  Tr. 1132.

Plaintiff argues there is an "abundance of medical evidence" after the relevant period showing "very significant degenerative changes" that support Plaintiff's disability allegations.  ECF No. 16 at 16.  However, as discussed *supra*, the ALJ gave great weight to the medical opinion of Dr. Morse, who opined there was insufficient evidence to conclude that Plaintiff's impairments were severe during the period at issue.  Tr. 1133-34; *see* Tr. 1163.  Further, the ALJ gave significant weight to the medical opinion of Olegario Ignacio, Jr., M.D., who opined that there was insufficient evidence to assess physical functional abilities during the period at issue.  Tr. 1134; *see* Tr. 76.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews*, 53 F.3d at 1039.  Where the

---

[4] The ALJ did not state that upon admission to a medical center on July 28, 2009 for GI bleeding, Plaintiff reported he had "been taking ibuprofen for his back pain for quite some time now."  Tr. 612.

ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical impairment alleged by Plaintiff. Tr. 1132. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's failure to seek treatment, *see infra*, to discount Plaintiff's symptom complaints.

### 2. Failure to Seek Treatment

The ALJ found that Plaintiff's symptom complaints were inconsistent with his failure to seek treatment for his back pain during the relevant period. Tr. 1132. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001);

*Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). Here, the ALJ observed that Plaintiff alleged disabling limitations due to pain caused by all movement, numbness and shooting pains in his back, arms, and legs, and an inability to stand for more than a few minutes. Tr. 1131 (citing Tr. 245-52). However, the ALJ found that Plaintiff did not seek any medical treatment for back pain during the period at issue. Tr. 1132. As noted *infra*, the ALJ observed that after the February 2009 emergency room visit, there were no additional medical visits related to his back impairment until March 2010. Tr. 1132.

Plaintiff contends that he was unable to seek treatment for his debilitating back pain due to lack of insurance and financial issues. ECF No. 16 at 10 (citing Tr. 1181). Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff testified that he did not have insurance during the relevant time period. *See* Tr. 1156, 1181. However, the ALJ noted that Plaintiff sought emergency room treatment for a GI bleed in July 2009. Tr. 1132 (citing Tr. 612). The ALJ reasonably determined that Plaintiff's lack of treatment

during the relevant period was inconsistent with claims of a disabling back

impairment.

### 3. Ability to Work with Impairments

The ALJ found that Plaintiff's allegations were inconsistent with his past

ability to work with his impairments. Tr. 1132. Working with an impairment

supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*,

966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray*, 554 F.3d at 1227 (seeking

work despite impairment supports inference that impairment is not disabling).

However, short-term work, which does not demonstrate the ability to sustain

substantial gainful employment, may be considered an unsuccessful work attempt

instead of substantial gainful activity. *Gatliff v. Comm'r Soc. Sec. Admin.*, 172

F.3d 690, 694 (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) ("Several courts, including this one, have recognized that disability

claimants should not be penalized for attempting to lead normal lives in the face of

their limitations."). Here, the ALJ observed that Plaintiff alleged his back

impairment significantly worsened after he was assaulted in February 2009, but

Plaintiff was able to work for three months following the assault. Tr. 1132-33.

However, the ALJ disregarded without discussion Plaintiff's report that he returned

to work after the assault with the intention of working through his back pain but

could no longer do his job. Tr. 1156, 1180, 1182. Plaintiff testified that his

ORDER - 23

employer made accommodations for him due to his pain and gave him a lighter

duty job. Tr. 1156, 1182-83. Plaintiff then testified that, due to his pain

symptoms, he was unable to perform his job even with the accommodations and he

was terminated three months after the assault because of the limitations caused by

his impairments. Tr. 1155-56, 1180-83. These accommodations and his eventual

termination are consistent with Plaintiff's allegations that his back impairment

significantly worsened after the assault. Tr. 1155-56, 1180, 1182, 1185. The ALJ

must consider all of the relevant evidence in the record and may not point to only

those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d

at 1207-08 (holding that an ALJ cannot selectively rely on some entries in a

claimant's records while ignoring others). In relying on Plaintiff's performance of

substantial gainful activity for three months after the assault without

acknowledging or discussing the nature of the accommodations Plaintiff received,

or the reason for his termination, the ALJ's discussion of Plaintiff's employment

activities was impermissibly selective. This finding is not supported by substantial

evidence.

     This error is harmless because the ALJ identified other specific, clear, and

convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533

F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that

an ALJ's error was harmless where the ALJ provided one or more invalid reasons

for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

## C.    Step Two

Plaintiff contends the ALJ erred by failing to identify Plaintiff's multilevel degenerative disc disease as a severe impairment at step two.  ECF No. 16 at 9-11. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 404.1521.  An impairment is non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Therefore, an impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting,

reaching, carrying, handling, responding appropriately to supervision and usual

work situations, and dealing with changes in a routine work setting. 20 C.F.R. §

404.1522 (2017); SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless

claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

Here, the ALJ found Plaintiff had the following medically determinable

impairments: degenerative disc disease of the cervical, lumbar, and thoracic spines.

Tr. 1132. However, the ALJ found the record did not establish that these

impairments significantly limited Plaintiff's ability to perform basic-work

activities for 12 consecutive months. Tr. 1130.

First, the ALJ noted that the record contained no medical evidence related to

Plaintiff's back impairments from February 2009 to March 2010, despite Plaintiff's

alleged onset date of June 1, 2009. Tr. 1132. Next, the ALJ found that the medical

evidence documenting Plaintiff's impairments did not establish that Plaintiff's

impairments caused more than a minimal limitation on Plaintiff's ability to

ORDER - 26

perform basic work-related tasks. Tr. 1132. Additionally, the ALJ considered and gave great weight to the medical opinion of Dr. Morse, who opined that there was insufficient evidence to conclude that Plaintiff's impairments were severe during the period at issue. Tr. 1133-34; *see* Tr. 1163. The ALJ also considered and gave significant weight to the medical opinion of Dr. Ignacio, who opined that there was insufficient evidence to assess physical functional abilities during the period at issue. Tr. 1134; *see* Tr. 76. The ALJ reasonably concluded that this evidence showed Plaintiff's impairments caused no more than a minimal limitation on Plaintiff's ability to perform basic work-related tasks during the relevant period. Tr. 1130, 1134.

Plaintiff offers evidence that he contends shows his impairments were severe during the relevant period. ECF No. 16 at 4-6, 10-11. Specifically, Plaintiff cites to examinations and imaging, Dr. Hamilton's opinion, and Plaintiff's own symptom claims. ECF No. 16 at 10. However, other than a July 30, 2009 emergency room report related to Plaintiff's GI bleed that referenced Plaintiff's assault leading to chronic low back pain, all of the other objective evidence cited by Plaintiff was from after the relevant time period. ECF No. 16 at 9-11; *see* Tr. 621 (July 30, 2009: a medical report noted that Plaintiff had a history of assault leading to chronic low back pain since February 2009); Tr. 506 (March 21, 2010: x-rays showed osseous structures that were remarkable for a mild to moderate

kyphosis of the graphic spine, at least two compression fractures in the mid-to lower thoracic spine which appeared old, and degenerative changes); Tr. 454-59 (March 23, April 23, and May 24, 2010: Plaintiff was treated for back pain and was prescribed pain medications to help relieve some of his pain); Tr. 451 (June 8, 2010: Plaintiff was treated for chronic back pain, shoulder pain, elbow pain, and bilateral numbness); Tr. 449 (June 29, 2010: Plaintiff was treated for chronic neck/back pain with numbness and tingling in his extremities); Tr. 447 (July 29, 2010: Plaintiff was treated for severe back pain and severe bilateral foot pain); Tr. 512 (December 15, 2010: an MRI of Plaintiff's thoracic spine revealed degenerative changes of the thoracic spine with an increased dorsal kyphosis, an old moderate compression fracture at T9, and other old mild compression deformities); Tr. 523 (March 30, 2011: MRI showed multilevel degenerative disc disease and facet changes, which produced multilevel foraminal stenosis; it was noted that the most significant stenosis was seen at C5-C6 on the left, where moderate to severe stenosis was found; the degenerative changes seen consisted of disc desiccation, diffuse disc bulge, loss of intervertebral disc height, end-plate sclerosis, and marginal osteophytosis); Tr. 396-97 (May 19, 2011: Plaintiff was treated for neck pain and his provider observed that Plaintiff was in distress from neck pain and had decreased neck range of motion; upon examination, Plaintiff's senses were decreased in a stocking glove distribution to light touch, pin prick, and

temperature; it was recommended that Plaintiff be evaluated for surgery regarding his cervical spine); Tr. 404, 406, 408-09 (January 22, 2012: during a physical examination, Plaintiff was unable to tandem gait and unable to squat; the medical examiner observed notable significant kyphosis of the spine, and found impaired range of motion of both the cervical and thoracic spine, as well as radiculopathy in both the cervical and lumbar spine); Tr. 403 (January 23, 2012: x-rays of Plaintiff's lumbar spine showed multilevel degenerative changes, including end plate changes, disc space narrowing, and bony spurring, facet arthropathy was seen, as well as narrowing irregularity of the SI joints). Plaintiff fails to show how these objective findings relate back to the period at issue. Further, the medical expert testified that there was nothing in the record to suggest that Plaintiff's spinal impairments were symptomatic during the relevant period, and although he could "infer that [Plaintiff] perhaps had medically determinable damage to all three levels of his cervical spine, and thoracic spine, and lumbar spine," he could not infer that these impairments were severe during the relevant period. Tr. 1163-64. Finally, as discussed *supra*, the ALJ properly discredited Plaintiff's subjective symptom complaints, thus, the ALJ was not required to credit those complaints in assessing the severity of his impairments. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The

evidence Plaintiff offers does not undermine the substantial evidence supporting the ALJ's conclusion.

### D.  Step Four

Plaintiff contends the ALJ erred at step four because the ALJ relied upon a hypothetical that failed to include all of Plaintiff's limitations.  ECF No. 16 at 18-19.  However, the ALJ's hypothetical need only include those limitations found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray*, 554 F.3d at 1228.  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id.*  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  A claimant fails to establish that an ALJ committed error by simply restating an argument that the ALJ improperly discounted certain evidence, when the record

demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539

F.3d 1169, 1175–76 (9th Cir. 2008).

Here, the ALJ made an alternative finding that Plaintiff would have been

able to perform his past relevant work as a building inspector even if his

impairments were severe prior to his date last insured. Tr. 1134. Plaintiff asserts

that the ALJ improperly rejected his symptom allegations and the opinion of his

medical provider, Dr. Hamilton, and that when the vocational expert was asked

about some of these limitations, he testified that Plaintiff would be unable to

sustain competitive gainful employment. ECF No. 16 at 19 (citing Tr. 1177, 1179-

80). Plaintiff's argument is based entirely on the assumption that the ALJ erred in

discrediting his symptom allegations and the opinion of his medical provider. *See*

*Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five findings was

unavailing where it "simply restates [claimant's] argument that the ALJ's RFC

finding did not account for all her limitations"). For reasons discussed throughout

this decision, the ALJ's adverse findings in her consideration of Plaintiff's

symptom allegations and the medical opinion evidence are legally sufficient and

supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC,

and she posed a hypothetical to the vocational expert that incorporated all of the

limitations in the ALJ's RFC determination, to which the expert responded that

Plaintiff could perform his past relevant work as a building inspector. Tr. 1178-79.

The ALJ properly relied upon this testimony to support the step four determination. Therefore, the ALJ's step four determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED October 31, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 32